130 Nev., Advance Opinion 99

IN THE SUPREME COURT OF THE STATE OF NEVADA

| | |
|---|---|
| ROBERT LESLIE STOCKMEIER,<br>Appellant,<br>vs.<br>TRACEY D. GREEN, STATE HEALTH<br>OFFICER,<br>Respondent. | No. 62327<br><br>**FILED**<br><br>DEC 3 1 2014<br><br>TRACIE K. LINDEMAN<br>CLERK OF SUPREME COURT<br>BY<br>DEPUTY CLERK |

Proper person appeal from a district court order denying a petition for a writ of mandamus and request for injunction. First Judicial District Court, Carson City; James Todd Russell, Judge.

*Reversed and remanded with instructions.*

Robert Leslie Stockmeier, Lovelock,
in Proper Person.

Catherine Cortez Masto, Attorney General, Carson City, and Linda C. Anderson, Chief Deputy Attorney General, Carson City,
for Respondent.

---

BEFORE HARDESTY, DOUGLAS and CHERRY, JJ.

## OPINION

By the Court, CHERRY, J.:

NRS 209.382(1)(b) requires respondent, Nevada's Chief Medical Officer,[1] to periodically examine and semiannually report to the

---

[1]Since the filing of appellant's petition, the Legislature has replaced the State Health Officer with a Chief Medical Officer. *Compare* 2001 Nev. Stat., 17th Special Sess., ch. 14, § 14, at 194 (prior version of the statute

*continued on next page...*

14-42530

Board of State Prison Commissioners regarding "[t]he nutritional adequacy of the diet of incarcerated offenders." At issue here is the district court's denial of appellant's petition for mandamus and injunctive relief, which sought to compel respondent to comply with the duties imposed by this statute. Our review of this decision requires us to determine whether respondent sufficiently complied with the dictates of NRS 209.382(1)(b). And in this regard, we conclude that respondent's examination of inmate diets and her resulting report to the Board fell well short of what was required, as her report included no analysis of the diets of general population inmates, addressed diets at only one of Nevada's correctional facilities, and generally lacked any indication as to how the required examination was conducted. We therefore reverse the denial of appellant's petition and remand this matter to the district court with instructions to issue a writ of mandamus compelling respondent to exercise her statutory duties in accordance with this opinion.

## FACTS AND PROCEDURAL HISTORY

This case began when appellant Robert Leslie Stockmeier, an inmate at Lovelock Correctional Center, filed the underlying district court petition seeking mandamus and injunctive relief to compel respondent Tracey Green, in her capacity as the Chief Medical Officer for the State of Nevada, to comply with NRS 209.382(1)(b) by examining the nutritional adequacy of inmate diets and making the required semiannual reports to the Board regarding her findings. Stockmeier alleged that Green failed to

---

*...continued*
referring to the State Health Officer), *with* NRS 209.382. This opinion will therefore refer to this position as the Chief Medical Officer in accordance with the current version of that statute.

comply with her statutory duties as to either of these requirements. In particular, he maintained that she had never examined the ingredients or nutritional properties of inmate diets and instead relied on the report of a dietician who merely reviewed a printed menu detailing what was being offered to inmates. Stockmeier further asserted that Green had failed to report to the Board regarding a finding from a Nevada Department of Corrections dietician that indicated that the diets served to inmates were high in sodium, cholesterol, and protein, which could lead to obesity, heart disease, and diabetes.

After the petition was filed, Stockmeier moved for summary judgment and Green submitted a response, addressing both the petition and the summary judgment motion, which asserted that she had regularly inspected inmate diets and had recently provided a written report of her findings to the Board. To support this contention, Green attached a cover letter addressed to the Acting Director of the Department of Corrections, which had purportedly been accompanied by her report to the Board. Although the letter indicated that Green had "no recommendations" for improving the inmate diets, a copy of the report was not provided to the district court. Nonetheless, the district court denied the petition, and Stockmeier, proceeding pro se, appealed that decision to this court.

On appeal, this court reversed the district court's denial of Stockmeier's petition. *See Stockmeier v. Green*, Docket No. 58067 (Order of Reversal and Remand, March 13, 2012). In so doing, this court noted that Green had failed to provide the district court with copies of any reports and that she had not submitted any other evidence to refute Stockmeier's assertion that she had failed to exercise the duties imposed by NRS 209.382(1)(b). As a result, this court concluded that the district

court had abused its discretion in denying the petition and remanded the matter with instructions to "require [Green] to submit evidence, such as the reports that were purportedly attached to the [cover] letter" so as to allow the district court to address the merits of Stockmeier's petition. *Stockmeier*, Docket No. 58067 (Order of Reversal and Remand, March 13, 2012).

On remand, Green submitted the entire report that she had presented to the Board in 2011 and provided minutes from a December 5, 2011, Board meeting at which she had appeared and informed the Board that she had found no nutritional deficiencies in her inspection of inmate diets. The report that Green provided, however, focused mainly on issues regarding medical care and sanitation in Nevada's prisons, rather than the diets served to the inmate population. To the extent that inmate diets were discussed, the report indicated that a dietician had reviewed the regular and medical diets provided for inmate consumption at one facility every six months and that the hospital at that facility had met the nutritional needs of prisoner-patients.[2]

Following Green's submission of these materials, Stockmeier submitted a response arguing that the report demonstrated Green's failure to comply with NRS 209.382(1)(b) because it contained no discussion of the diets served to general population inmates and only a limited discussion of medical diets for a small number of inmates. In reply, Green asserted that her office maintains only records of deficiencies

---

[2]It appears from the report and Green's response to Stockmeier's civil pro se appeal statement that the dietician had conducted this review at the behest of the correctional facility, rather than as part of Green's inspection of inmate diets.

discovered in inmate diets rather than areas of compliance. She also provided a declaration stating that her employees "regularly inspected the correctional facilities and periodically examined 'the nutritional adequacy of the diet of incarcerated offenders'" in accordance with NRS 209.382(1)(b)'s requirements. Green's declaration did not offer any details regarding how or when the inspections were conducted, although it did state that no cases of malnutrition or vitamin deficiencies had been discovered.

After considering the parties' submissions, the district court denied Stockmeier's petition, concluding that Green had complied with the requirements of NRS 209.382(1)(b) by preparing and presenting the 2011 report to the Board. The district court further agreed with Green's contention that assessing nutritional adequacy merely required her to ensure that inmates were not being malnourished. Despite its conclusion that Green had adequately performed her statutory duties, the district court nonetheless noted Green's failure to carry out her inspection and reporting duties "on a uniform and consistent basis" and cautioned her to continue to comply with NRS 209.382(1)(b) "in a uniform and documented manner." Again representing himself, Stockmeier appealed that determination to this court.

## DISCUSSION

NRS 209.381(1) requires that each offender incarcerated at an institution or facility operated by the Nevada Department of Corrections be provided a "healthful diet." To that end, NRS 209.382(1)(b) provides that "[t]he Chief Medical Officer shall periodically examine and shall report to the Board" on a semiannual basis regarding "[t]he nutritional adequacy of the diet of incarcerated offenders taking into account the religious or medical dietary needs of an offender and the adjustment of

dietary allowances for age, sex and level of activity." After the required examination is conducted and the report of that examination is presented to the Board, if the Chief Medical Officer's report reveals any deficiencies in the nutritional adequacy of the diet offered to incarcerated offenders, NRS 209.382(2) provides that "[t]he Board shall take appropriate action to remedy any [reported] deficiencies."

In this appeal, Stockmeier maintains that Green failed to comply with the duties imposed by NRS 209.382(1)(b) and that the district court should have granted his petition and compelled her to do so. Green disagrees. We review a district court's denial of a petition for a writ of mandamus for an abuse of discretion, and we review questions of statutory interpretation de novo. *Reno Newspapers, Inc. v. Haley*, 126 Nev. 211, 214, 234 P.3d 922, 924 (2010).

*Green failed to comply with the broad examination and reporting requirements set forth in NRS 209.382(1)(b)*

While the Chief Medical Officer's examination of inmate diets must account for religious and medical dietary needs and the age, sex, and activity level of the inmates, NRS 209.382(1)(b) establishes no other requirements for what must be addressed or considered by the Chief Medical Officer or what information must be included in the report presented to the Board. In this regard, it seems that the Legislature has chosen to provide the Chief Medical Officer with considerable discretion in fulfilling her duties under NRS 209.382(1)(b), and we will not infringe on the role of the Legislature by reading into the statute specific steps that the Chief Medical Officer must take in carrying out these statutory duties. *See N. Lake Tahoe Fire Prot. Dist. v. Washoe Cnty. Bd. of Cnty. Comm'rs*, 129 Nev. ___, ___, 310 P.3d 583, 588 (2013) (noting that it is the Legislature that makes policy and value choices by enacting laws and that

this court's role is to construe and apply those laws). Instead, we limit our consideration to assessing Green's efforts in examining and reporting to the Board regarding the nutritional adequacy of inmate diets.

*The report to the Board was inadequate*

Our review of the record demonstrates Green's failure to sufficiently examine and report upon the nutritional adequacy of inmate diets. While Green relies on the single 2011 report to support her assertion that she complied with NRS 209.382(1)(b)'s requirements, that report serves only to undermine this position. Green's report primarily focuses on issues other than inmate diets, and the limited materials included in the report regarding this subject provide no information on, or analysis of, the nutritional adequacy of the general population diets. Indeed, there is nothing in the report to even indicate that Green or her staff actually examined the diets served to the general inmate population. The report's only reference to general population diets is a notation regarding the Lovelock Correctional Center indicating that a dietician "had never been to the [Lovelock] correctional center and [had] only reviewed menus for nutritional adequacy." And as previously noted, the report seems to suggest that this menu-based review was carried out at the direction of the correctional center, rather than as part of Green's examination of inmate diets.

Although the report does not include a copy of these or any other menus, Stockmeier provided the district court with a February 2010 menu from Lovelock Correctional Center. This menu contains no information regarding the nutritional value of the menu items being offered, and in some instances, it does not even describe the type of food being served. For example, every lunch entry on the menu simply describes the lunch offering as "Sacks," while certain dinner offerings are

identified as "Chefs Choice." Thus, even if this menu-based review had formed a part of Green's examination of inmate diets, such menus could not possibly provide a basis for sufficiently examining their nutritional adequacy.

And while Green's report also contains some notations regarding the diets provided to Lovelock inmates receiving medical treatment, this information is limited to a yes or no check sheet on which an individual carrying out an inspection of the facility marked "yes" for items such as "[t]he menu for a patient must meet the nutritional needs of the patient" and "[a] hospital shall provide each patient with a nourishing, palatable balanced diet that meets the daily nutritional and dietary needs of the patient." This section of the report, however, provides no indication as to what Green or her staff reviewed in making these findings and contains no information regarding what these inmates were being served or how these meals satisfied the aforementioned requirements.

Altogether, the minimal discussion of the general population and medical diets detailed above, which comprises the totality of the information regarding inmate diets provided in the report, demonstrates Green's failure to faithfully execute the duties imposed upon her by NRS 209.382(1)(b). By its plain language, this statute requires Green, as the Chief Medical Officer, to "periodically examine" and provide semiannual reports to the Board regarding the nutritional adequacy of inmate diets. NRS 209.382(1)(b); *see also Arguello v. Sunset Station, Inc.*, 127 Nev. ___, ___, 252 P.3d 206, 209 (2011) (stating that, when interpreting a statute, this court first looks to the statute's plain language). But Green's report does not detail what foods are being served to inmates at Nevada's various correctional facilities, much less provide any explanation of how these

unidentified foods provide inmates with a nutritionally adequate diet. Further, the limited diet-related information included in the report addresses only the Lovelock Correctional Center, and thus, no information at all is provided regarding inmate diets at any of Nevada's other correctional facilities. And finally, the report fails to offer any explanation of how the examinations were conducted, what standards were used to determine the adequacy of the inmate diets and identify any deficiencies in those diets, or how issues related to inmates' religious and medical dietary needs and their age, sex, and activity levels were accounted for. Even if, as Green asserts on appeal, her office only documents deficiencies discovered in inmate diets, the only information this report could be construed as providing, given the absence of any noted dietary deficiencies in the report, is that the inmates were not malnourished. In this regard, Green maintains that documenting the fact that inmates are not malnourished is enough to comply with NRS 209.382(1)(b). We address this contention next.

*Assessing nutritional adequacy requires more than merely ensuring inmates are not malnourished*

Stockmeier argues that Green improperly interprets the requirement that she examine the nutritional adequacy of inmate diets as requiring her only to determine whether these diets will cause the inmate population to become malnourished. Green, however, asserts that she is not required to ensure that inmates receive an optimal diet, but rather, need only determine that the diets served do not result in malnutrition or vitamin deficiencies. The district court accepted Green's position on this issue. For the reasons set forth below, we disagree with this conclusion.

While NRS 209.382 does not set forth the specific process required for evaluating the nutritional adequacy of inmate diets, and we

in no way imply that inmate diets must be a perfect example of nutritional balance, the language of NRS 209.382(1)(b) demonstrates that merely ensuring that inmate diets do not cause malnutrition or vitamin deficiencies is not sufficient. This statute requires the Chief Medical Officer to "examine" the "nutritional adequacy" of the inmate diets in light of any "religious or medical dietary needs" and the "age, sex and activity level" of the inmates. NRS 209.382(1)(b). Although, as noted above, we decline to set forth additional parameters to guide the Chief Medical Officer in assessing the nutritional adequacy of inmate diets, the Legislature's inclusion of these specific requirements in the otherwise broad language of NRS 209.382(1)(b) convinces us that Green must do something more than merely look for signs of malnutrition or vitamin deficiency in the inmates in order to comply with the requirements imposed by that statute.[3] And contrary to Green's assertion on appeal, NRS 209.381(1)'s requirement that inmates be fed "a healthful diet" further supports our conclusion that Green's efforts must go beyond merely ensuring that inmates are not malnourished. *See Allstate Ins. Co. v. Fackett*, 125 Nev. 132, 138, 206 P.3d 572, 576 (2009) (holding that statutes should be interpreted in harmony with their statutory scheme). Moreover, as NRS 209.382(2) makes clear, the Chief Medical Officer's

---

[3]To the extent that Stockmeier asserts that Green was required to submit a report from a Department of Corrections dietician stating that inmate diets were high in sodium, cholesterol, and protein, which could lead to obesity, heart disease, and diabetes, to the Board, we reject that assertion, as NRS 209.382(1)(b) does not impose specific requirements on how Green is to report to the Board. Nevertheless, the findings in the dietician's report were relevant evidence demonstrating that Green was not fully complying with the requirement that she examine inmate diets for nutritional adequacy and report her findings to the Board.

examination and report must, at a minimum, provide sufficient information regarding the nutritional adequacy of inmate diets to allow the Board to take "appropriate action to remedy any deficiencies reported."

In sum, the 2011 report and Green's own arguments demonstrate the inadequacy of her efforts to comply with NRS 209.382(1)(b). And while Green submitted a declaration asserting that she and her staff had "regularly inspected the correctional facilities and periodically examined 'the nutritional adequacy'" of inmate diets in accordance with NRS 209.382(1)(b), there is nothing in her declaration, the report, or any other portion of the record to support this statement. Thus, in the absence of any implication in Green's report to the Board to demonstrate that she or her staff actually examined inmate diets, we cannot conclude that she satisfied the minimal requirements of NRS 209.382(1)(b) that she examine and report to the Board regarding the nutritional adequacy of inmate diets.

*Writ relief was warranted*

Stockmeier's final appellate assertion is that Green has failed to appear and report to the Board every six months as NRS 209.382(1)(b) requires. In responding to this argument, Green does not dispute that she must report to the Board twice a year and expresses her intent to comply with this requirement. In essence then, Green concedes that she has not complied with the statute's semiannual reporting requirement by providing the mandated two reports per year, a position that is supported both by the record and the district court's order, which noted Green's noncompliance with the reporting requirement, even while denying

Stockmeier's petition.[4] Under these circumstances, we must conclude that Green has not complied with the semiannual reporting duties imposed by NRS 209.382(1)(b). Nonetheless, in the absence of any evidence regarding the frequency or scheduling of the Board's meetings, we decline Stockmeier's request to declare that the semiannual reporting requirement necessitates that Green provide reports to the Board at strict six-month intervals.

As detailed above, the record on appeal clearly demonstrates that Green has failed to fulfill the duties imposed on her by NRS 209.382(1)(b). We therefore conclude that Stockmeier has demonstrated that a writ of mandamus was warranted to compel Green to carry out the duties articulated by that statute, NRS 34.160 (providing that mandamus relief is appropriate "to compel the performance of an act which the law especially enjoins as a duty resulting from an office, trust or station"); *Mineral Cnty. v. State, Dep't of Conservation & Natural Res.*, 117 Nev. 235, 242-43, 20 P.3d 800, 805 (2001) (holding that, in order for mandamus relief to be appropriate, "the action being compelled must be one already required by law"), and that the district court abused its discretion in denying Stockmeier's petition for a writ of mandamus.[5] *See Reno*

---

[4]Among other things, the district court pointed out that the Governor had actually admonished Green for failing to provide the required reports on a semiannual basis.

[5]In light of the deficiencies identified in Green's report and her failure to comply with the semiannual reporting requirement, the district court's conclusion that Green's mere submission of the 2011 report rendered Stockmeier's petition moot was improper. As a result, we reject Green's assertion that this appeal should likewise be dismissed on mootness grounds.

*Newspapers*, 126 Nev. at 214, 234 P.3d at 924 (providing that this court reviews the district court's denial of a petition for a writ of mandamus for an abuse of discretion).

## CONCLUSION

For the reasons set forth above, we reverse the district court's denial of Stockmeier's petition and remand this matter to the district court. On remand, the district court shall issue a writ of mandamus ordering Green to comply with the requirements of NRS 209.382(1)(b) in line with this opinion.[6]

_____, J.
Cherry

We concur:

_____, J.
Hardesty

_____, J.
Douglas

---

[6]Because we direct the district court to grant Stockmeier's petition for a writ of mandamus, we do not address the denial of his request for injunctive relief.

SUPREME COURT
OF
NEVADA

(0) 1947A